KEITH E. EGGLETON, keggleton@wsgr.com, State Bar No.159842
RODNEY G. STRICKLAND, rstrickland@wsg.rcom, State Bar No. 161934
JONI L. OSTLER, jostler@wsgr.com, State Bar No. 230009
FREEDA LUGO, flugo@wsgr.com, State Bar No. 244913
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Defendants
BIGBAND NETWORKS, INC., AMIR BASSAN-
ESKENAZI, FREDERICK A. BALL, RAN OZ,
LLOYD CARNEY, DEAN GILBERT, KENNETH
A. GOLDMAN, GAL ISRAELY, BRUCE I.
SACHS, ROBERT J. SACHS and GEOFFREY Y.
YANG

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES WILTJER, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BIGBAND NETWORKS, INC., et al. <br><br> Defendants. | Case No. C08-0022-CRB <br><br> **DECLARATION OF FREEDA LUGO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** <br><br><br> DATE:  February 22, 2008 <br> TIME:    10:00 a.m. <br> JUDGE:  Hon. Charles R. Breyer |

I, Freeda Yllana Lugo, declare as follows:

I am an attorney associated with the law firm of Wilson Sonsini Goodrich & Rosati, Professional Corporation, attorneys for Defendants Amir Bassan-Eskenazi, Frederick A. Ball, Ran Oz, Lloyd Carney, Dean Gilbert, Kenneth A. Goldman, Gal Israely, Bruce I. Sachs, Robert J. Sachs, Geoffrey Y. Yang, and BigBand Networks, Inc. (collectively, the "BigBand Defendants"), in this action.  I am admitted to practice before the courts of the State of California.  I submit this declaration in support of the BigBand Defendants' Opposition to Plaintiff's Motion to Remand, filed concurrently herewith.  I have personal knowledge of the facts set forth in this declaration and can testify competently to those facts.

1.      Attached herewith as Exhibit A are excerpts from a true and correct copy of S. REP. NO. 105-182 (1998).

2.      Attached herewith as Exhibit B are excerpts from a true and correct copy of H.R. CONF. REP. NO. 105-803 (1998).

3.      Attached herewith as Exhibit C are excerpts from a true and correct copy of H.R. REP. NO. 105-640 (1998).

4.      Attached herewith as Exhibit D is a true and correct copy of *Purowitz v. DreamWorks Animation SKG*, No. CV 05-6090, slip op. (C.D. Cal. Nov. 15, 2005).

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed in Palo Alto, California on February 8, 2008.


     /s/      Freeda Y. Lugo
               Freeda Lugo

# EXHIBIT A

Calendar No. 355

| 105TH CONGRESS<br>2d Session | SENATE | REPORT<br>105–182 |
|---|---|---|

THE SECURITIES LITIGATION
UNIFORM STANDARDS ACT OF 1998

―――――

R E P O R T

OF THE

COMMITTEE ON BANKING, HOUSING,
AND URBAN AFFAIRS
UNITED STATES SENATE

TO ACCOMPANY

S. 1260

TOGETHER WITH

ADDITIONAL VIEWS



MAY 4, 1998.—Ordered to be printed

―――――

U.S. GOVERNMENT PRINTING OFFICE

59–010                    WASHINGTON : 1998

Calendar No. 355

| | | |
|---|---|---|
| 105TH CONGRESS<br>*2d Session* | SENATE | REPORT<br>105–182 |

## THE SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

———————

MAY 4, 1998.—Ordered to be printed

———————

Mr. D'AMATO, from the Committee on Banking, Housing, and Urban Affairs, submitted the following

# REPORT

[To accompany S. 1260]

### INTRODUCTION

The Committee on Banking, Housing and Urban Affairs, to which was referred the bill (S. 1260), to amend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under State law, having considered the same, reports favorably thereon with an amendment in the nature of a substitute, and recommends that the bill as amended do pass.

### HISTORY OF THE LEGISLATION

On July 24, 1997, the Subcommittee on Securities held an oversight hearing on the operation of the Private Securities Litigation Reform Act (hereinafter referred to as either the "PSLRA" or the "1995 Act") which was passed over presidential veto during the 104th Congress (PL–104–67). At this hearing testimony was received from: Arthur Levitt, Chairman of the Securities and Exchange Commission; Keith Paul Bishop, Commissioner, California Department of Corporations; Dr. Joseph A. Grundfest, Professor, Stanford Law School and former Commissioner, Securities and Exchange Commission; Mr. Michael A. Perino Lecturer, Stanford Law School; Mr. Joseph Polizotto, Managing Director, Office of the General Counsel, Lehman Brothers (on behalf of the Securities Industry Association); Mr. Kenneth Janke, Sr., President and Chief Executive Officer, National Association of Investors Corporation; Mr. Richard Miller, General Counsel, American Institute of Certified

2

Public Accountants; Mr. Leonard Simon, Milberg Weiss Bershad Hynes and Lerach (on behalf of the National Association of Securities and Commercial Law Attorneys); Mr. Brian Dovey, President, National Venture Capital Association and; Mr. Robert C. Hinckley, Vice President, Strategic Plans and Programs, Xilinx (on behalf of the American Electronics Association).

As a result of the testimony received at the July 1997 hearing, Senators Gramm, Dodd, Boxer, Faircloth, Hagel and Moseley-Braun, together with seven other Senators who are not members of the Committee introduced on October 7, 1997, S. 1260, the "Securities Litigation Uniform Standards Act of 1997" (hereinafter referred to as either "Uniform Standards" or "S. 1260") Subsequently, a total of forty Senators cosponsored the legislation, including twelve from the Committee (Senators Gramm. Dodd, Boxer, Faircloth, Hagel, Moseley-Braun, Bennett, Grams, Kerry, Mack, Allard and Enzi).

On October 29, 1997 and on February 23, 1998, the Subcommittee on Securities held legislative hearings on S. 1260. Witnesses testifying on October 29, 1997 included: U.S. Representative Rick White; U.S. Representative Anna Eshoo; Arthur Levitt, Chairman, the Securities and Exchange Commission (SEC); Isaac C. Hunt, Jr., Commissioner, Securities and Exchange Commission; Robert C. Hinckley, Vice President, Strategic Plans and Programs, Xilinx, who testified on behalf of the American Electronics Association; Harry Smith, Mayor of Greenwood, Mississippi, who testified on behalf of the National League of Cities; Herbert Milstein of Cohen, Milstein, Hausfeld & Toll, who testified on behalf of the National Association of Securities and Commercial Law Attorneys; Professor Michael Perino, Stanford Law School; Thomas E. O'Hara, Chairman, Board of Trustees, the National Association of Investors Corporations and Daniel Cooperman, Senior Vice President, General Counsel, and Corporate Secretary, Oracle Corporation, who testified on behalf of the Software Publishers Association.

Witnesses testifying on February 23, 1998 included: Boris Feldman, Wilson, Sonsini, Goodrich & Rosati; Professor Richard W. Painter, Cornell Law School; Michael H. Morris, Vice President and General Counsel, Sun Microsystems; Mary Rouleau, Legislative Director, Consumer Federation of America; J. Harry Weatherly, Director of Finance, Mecklenburg County, North Carolina, on behalf of the Government Finance Officers Association; and John F. Olson, Gibson, Dunn & Crutcher.

On April 29, 1998, the Committee met in Executive Session to consider and adopt an amendment in the nature of a substitute that was offered by Chairman D'Amato and Senators Gramm and Dodd. The Committee also adopted an amendment, by voice vote, providing two findings to the bill. The amendment was offered by Chairman D'Amato and Senators Gramm and Dodd. The amendment makes clear the Committee's intention to enact this legislation in order to prevent state laws from being used to frustrate the operation and goals of the 1995 Reform Act. The legislation was ordered reported from Committee by a vote of 14–4. Senators Shelby, Sarbanes, Bryan and Johnson voted against this legislation.

3

## PURPOSE AND SCOPE OF LEGISLATION

The need for this legislation became apparent during a Securities Subcommittee hearing on July 24, 1997. This hearing was held to review the status of the implementation and impact of the "Private Securities Litigation Reform Act of 1995."[1] During the course of that hearing one disturbing trend became apparent; namely, that there was a noticeable shift in class action litigation from federal to state courts. At this hearing, one witness pointed out the dangers of maintaining differing federal and state standards of liability for nationally-traded securities:

> Disparate, and shifting, state litigation procedures may expose issuers to the potential for significant liability that cannot easily be evaluated in advance, or assessed when a statement is made. At a time when we are increasingly experiencing and encouraging national and international securities offerings and listings, and expending great effort to rationalize and streamline our securities markets, this fragmentation of investor remedies potentially imposes costs that outweigh the benefits. Rather than permit or foster fragmentation of our national system of securities litigation, we should give due consideration to the benefits flowing to investors from a uniform national approach.[2]

Former SEC Commissioner Joseph Grundfest summarized this post 1995 Act increase in state securities class actions in testimony co-authored with his fellow Stanford Law School faculty member Michael Perino:

> The relative stability of the aggregate litigation rate masks a significant shift of activity from federal to state court * * *. There is widespread agreement that these figures represent a substantial increase in state court litigation. Two phenomena seem to explain the bulk of this shift. First, there appears to be a "substitution effect" whereby plaintiff's counsel file state court complaints when the underlying facts appear not to satisfy new, more stringent federal pleading requirements, or otherwise seek to avoid the substantive or procedural provisions of the Act. Second plaintiffs appear to be resorting to increased parallel state and federal litigation in an effort to avoid federal discovery stays or to establish alternative state court venues for settlement of federal claims.[3]

While there was some disagreement as to the exact size of the increase in state class-action filings, the overall evidence received by the Committee is compelling.[4] As one witness testified "(t)he

---

[1] Pub Law No. 104–67 (Dec. 22, 1995).

[2] Testimony of Stephen M.H. Wallman, Commissioner, Securities and Exchange Commission; submitted to the Subcommittee on Securities' "Oversight Hearing on the Private Securities Litigation reform Act of 1995" (the "Reform Act Hearing"), July 24, 1997, p. 1.

[3] Joint prepared statement of Joseph A. Grundfest and Michael A. Perino, "Reform Act Hearing," July 24, 1997, p. 6.

[4] "* * * the apparent shift to state court may be the most significant development in securities litigation post-Reform Act." Securities and Exchange Commission, Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, p. 69 (1997); see also Statement of Senator Phil Gramm, Senate Subcommittee on
Continued

4

single fact is that state-court class actions involving nationally traded securities were virtually unknown prior to the [1995 Act]; they are brought with some frequency now." [5]

Further, the Committee has found that this state class-action trend has had an impact beyond the number of, and dollar amounts involved in, the class actions filed. This trend has created a ripple-effect that has inhibited small, high-growth companies in their efforts to raise capital, and has damaged the overall efficiency of our capital markets.[6] Specifically, the increased risk of state court class actions has had a chilling effect on the use of the "safe-harbor" and other important provisions of the 1995 Act.[7] The safe harbor was intended to help get valuable financial forecasts and forward-looking information to investors, so that these investors could make decisions with as much information as possible; as Thomas O'Hara of the National Association of Investors Corporation ("NAIC"), testified:

> The key to becoming successful with high-tech investments is a willingness to recognize—and tolerate—the inherent volatility of the business and access to crucial forward-looking information so an investor can make a wise decision.[8]

A number of witnesses at the July 1997 hearing advocated legislation to establish uniform standards for private securities class action litigation.[9] This legislation is an outgrowth of the July 1997 hearings and subsequent investigation and oversight by the Committee.

Some critics of establishing a uniform standard of liability have attacked such legislation as being an affront on Federalism and contrary to the recent trend towards reinforcing state rights.[10] Proponents of the legislation have argued that we live in an information age in which we have truly national, if not international, securities markets and that uniform standards are entirely consistent with Congress's preeminent power over the regulation of interstate and foreign commerce. The Committee, while sensitive to both these considerations, found the interest in promoting efficient national markets to be the more convincing and compelling consideration in this context.

---

Securities Hearing, February 23, 1998, entering into the record materials submitted by Price, Waterhouse, LLP documenting both the rise in state securities class action cases and the changing nature of those cases; see also Michael A. Perino, Fraud and Federalism: Preempting Private State Securities Fraud Causes of Action, Stanford Law Review (forthcoming 1998), manuscript at 31, n. 127; see also Joseph A. Grundfest and Michael A. Perino; Securities Litigation Reform: The First Year's Experience (Release 97.1), Summary of Major Findings, p. ii–iii; Stanford Law School; February 27, 1997.

[3] Written testimony of John F. Olson of Gibson, Dunn & Crutcher, "Hearing on S. 1260," February 23, 1998, p. 5.

[6] Joint prepared statement of Joseph A. Grundfest and Michael A. Perino, "Reform Act Hearing," July 24, 1997, p. 6.

[7] See, e.g., Prepared statement of Michael Morris, Vice President and General Counsel, Sun Microsystems, "Hearing on S. 1260," February 23, 1998.

[8] Written statement of Thomas E. O'Hara, Chairman, NAIC, "Hearing on S. 1260," October 29, 1997.

[9] See, e.g., Grundfest and Perino, supra, note 2; Written statement of Robert C. Hinckely, Vice President Strategic Plans and Programs, XILINX, on behalf of The American Electronics Association, the Reform Act Hearing, July 27, 1997, p. 17.

[10] Written statement of Hon. Harry Smith, Mayor, Greenwood, Mississippi, on behalf of the National League of Cities, "Hearing on S. 1260," October 29, 1997, p. 8.

7

should be subject to the bill's provisions. To address this goal, and to establish objective criteria in the application of the definition, the Committee specifically included a threshold number of fifty or more persons or prospective class members as part of the definition of a class action under this legislation.

Section 2(f)(1)(A)(i)(II) of the legislation provides a definition that closely tracks the relevant provisions of Rule 23 of the Federal Rules of Civil Procedure in which a suit is brought by representative plaintiffs on behalf of themselves and other unnamed parties. Section 2(f)(1)(A)(i)(I), however, provides that any single lawsuit is treated as a class action if it seeks damages on behalf of more than fifty persons and questions of law or fact common to the prospective class predominate, without regard to questions of individualized reliance. The predominance requirement, modeled on Rule 23, is included to assure that claims that are not closely related, but that are included in a single proceeding only for the purposes of convenience are not treated as a class action. The Committee is conscious, however, of the danger that the predominance requirement could be used as a loophole to bring a single suit that names many plaintiffs. If such a suit is brought under a state law that requires proof of each individual plaintiff's reliance on a defendant's alleged misstatement or omission, the necessity of proving reliance on an individual basis might mean that common questions would not predominate and the suit accordingly would not be treated as a class action.

Indeed the Supreme Court stated in *Basic, Inc.* v. *Levinson* [485 U.S. 224, 242, (1988)] that "requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would * * * prevent plaintiffs from proceeding with a class action, since individual issues would * * * overwhelm the common ones." To avoid this problem, the definition provides that the predominance inquiry must be undertaken without reference to issues of individualized reliance, so that the necessity of proving reliance on an individual basis would not defeat treatment of the suit as a class action.

Section 2(f)(1)(A)(ii) is a definition of class action that is intended to prevent evasion of the bill through the use of so-called "mass actions." These kinds of actions are now brought in product liability, environmental tort and similar cases. In practice, such suits may function very much like traditional class actions and, because they involve many plaintiffs, they may have a very high settlement value. They accordingly may be abused by lawyers who seek to evade the provisions of this Act in order bring coercive strike suits.

Subpart (A)(ii) addresses the Committee's concern by including in the definition of class action any group of lawsuits that are filed or pending in the same court, that in the aggregate seek damages on behalf of more than fifty persons, that involve common questions of law or fact, and which are joined, consolidated, or otherwise proceed as a single action for any purpose. The Committee does not intend for the bill to prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same state court against a single defendant.

8

However, the provisions of the bill would apply where the court orders that the suits be joined, consolidated, or otherwise proceed as a single action at the state level. The Committee also notes that when such suits proceed as a single action in state court, it is frequently at the request of the plaintiffs.

The class action definition has been changed from the original text of S. 1260 to ensure that the legislation does not cover instances in which a person or entity is duly authorized by law, other than a provision of state or federal law governing class action procedures, to seek damages on behalf of another person or entity. Thus, a trustee in bankruptcy, a guardian, a receiver, and other persons or entities duly authorized by law (other than by a provision of state or federal law governing class action procedures) to seek damages on behalf of another person or entity would not be covered by this provision.

Finally, while the Committee believes that it has effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, it remains the Committee's intent that the bill be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.

SECTION-BY-SECTION ANALYSIS

*Section 1. Short title*

The short title of the bill is the Securities Litigation Uniform Standards Act of 1998.

*Section 2. Findings*

Congress finds that in order to avoid the thwarting of the purpose of the Private Securities Litigation Reform Act of 1995, national standards for nationally traded securities must be enacted, while preserving the appropriate enforcement powers of state regulators, and the right of individuals to bring suit.

*Section 3. Limitation on remedies*

Subsection 3(a) amends Section 16 of the Securities Act of 1933 as follows:

Subsection 16(a) is a savings clause.

Subsection 16(b) provides that no class action based on State law alleging fraud in connection with the purchase or sale of covered securities may be maintained in State or Federal court.

Subsection 16(c) provides that any class action described in Subsection (b) that is brought in a State court shall be removable to a Federal district court, and may be dismissed pursuant to the provisions of subsection (b).

Subsection 16(d) of the new section 16 provides for the preservation of certain law suits brought under State law affecting conduct of corporate officers with respect to certain corporate actions, including tender offers, exchange offers or the exercise of dissenter's or appraisal rights.

9

Subsection 16(e) of the new section 16 reemphasizes that State securities commissions retain their jurisdiction to investigate and bring enforcement actions.

Subsection 16(f) of the new section 16 provides for definitions under the section, including definitions of "class action," "covered security," and "affiliate of the issuer." "Class action" is defined so as to capture mass actions, but to exclude shareholder derivative actions and actions by a group of less than 50 individuals or entities. "Covered securities" includes securities satisfy the definition of that term given in subsection 18(b)(1) and 18(b)(2) of the Securities Act of 1933.

Subsection 3(b) amends Section 28 of the Securities Exchange Act of 1934 so as to effect the changes to that section substantially similar to, and consistent with, the amendments that subsection 3(a) makes to the Securities Act of 1933.

*Section 4. Applicability*

The changes in law made by the bill do not affect any court action commenced before and pending on the date of enactment of the legislation.

REGULATORY IMPACT STATEMENT

This legislation is designed to address and unforeseen "loophole" in the 1995 Private Securities Litigation Act, that has blocked that law from accomplishing its stated goal of reforming private securities litigation. Because S.1260 seeks to achieve further reforms in the private securities litigation system, the Committee believes that this legislation will have little or no regulatory impact.

COST OF LEGISLATION

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, May 1, 1998.*

Hon. ALFONSE M. D'AMATO,
*Chairman, Committee on Banking, Housing and Urban Affairs,*
*U.S. Senate, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for S. 1260, the Securities Litigation Uniform Standards Act of 1998.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contacts are Kathleen Gramp (for federal costs), and Pepper Santalucia (for the state and local impact).

Sincerely,

JUNE E. O'NEILL, *Director.*

Enclosure.

CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

*S. 1260—Securities Litigation Uniform Standards Act of 1998*

S. 1260 would amend existing law related to class actions involving certain types of securities fraud. Under this bill, certain class

# EXHIBIT B

105TH CONGRESS ⎱
2d Session ⎰ HOUSE OF REPRESENTATIVES ⎰ REPORT
⎱ 105–803

## SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

OCTOBER 9, 1998.—Ordered to be printed

Mr. BLILEY, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany S. 1260]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1260), to amend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under State law, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the House amendment, insert the following:

### SECTION 1. SHORT TITLE.

*This Act may be cited as the "Securities Litigation Uniform Standards Act of 1998".*

### SEC. 2. FINDINGS.

*The Congress finds that—*

*(1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;*

*(2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts;*

*(3) this shift has prevented that Act from fully achieving its objectives;*

★ 69–006

12

    *(1) Section 203(e)(8)(B) (15 U.S.C. 80b–3(e)(8)(B)) is amended by inserting "or" after the semicolon.*

    *(2) Section 222(b)(2) (15 U.S.C. 80b–18a(b)(2)) is amended by striking "principle" and inserting "principal".*

*(e) TRUST INDENTURE ACT OF 1939.—The Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.) is amended as follows:*

    *(1) Section 303 (15 U.S.C. 77ccc) is amended by striking "section 2" each place it appears in paragraphs (2) and (3) and inserting "section 2(a)".*

    *(2) Section 304(a)(4)(A) (15 U.S.C. 77ddd(a)(4)(A)) is amended by striking "(14) of subsection" and inserting "(13) of section".*

    *(3) Section 313(a) (15 U.S.C. 77mmm(a)) is amended—*

        *(A) by inserting "any change to" after the paragraph designation at the beginning of paragraph (4); and*

        *(B) by striking "any change to" in paragraph (6).*

    *(4) Section 319(b) (15 U.S.C. 77sss(b)) is amended by striking "the Federal Register Act" and inserting "chapter 15 of title 44, United States Code,".*

**SEC. 302. EXEMPTION OF SECURITIES ISSUED IN CONNECTION WITH CERTAIN STATE HEARINGS.**

    *Section 18(b)(4)(C) of the Securities Act of 1933 (15 U.S.C. 77r(b)(4)(C)) is amended by striking "paragraph (4) or (11)" and inserting "paragraph (4), (10), or (11)".*

    And the House agree to the same.

TOM BLILEY,
M.G. OXLEY,
BILLY TAUZIN,
CHRIS COX,
RICK WHITE,
ANNA G. ESHOO,
*Managers on the Part of the House.*

ALFONSE D'AMATO,
PHIL GRAMM,
CHRIS DODD,
*Managers on the Part of the Senate.*

Joint Explanatory Statement of the Committee of
Conference

The managers on the part of the House and the Senate at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1260) to amend the Securities Act of 1933 and the Securities Exchange Act of 1934 to limit the conduct of securities class actions under State law, and for other purposes, submit the following joint statement to the House and the Senate in explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report:

The Securities Litigation Uniform Standards Act of 1998

UNIFORM STANDARDS

Title 1 of S. 1260, the Securities Litigation Uniform Standards Act of 1998, makes Federal court the exclusive venue for most securities class action lawsuits. The purpose of this title is to prevent plaintiffs from seeking to evade the protections that Federal law provides against abusive litigation by filing suit in State, rather than in Federal, court. The legislation is designed to protect the interests of shareholders and employees of public companies that are the target of meritless "strike" suits. The purpose of these strike suits is to extract a sizeable settlement from companies that are forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigating.

Additionally, consistent with the determination that Congress made in the National Securities Markets Improvement Act [1] (NSMIA), this legislation establishes uniform national rules for securities class action litigation involving our national capital markets. Under the legislation, class actions relating to a "covered security" (as defined by section 18(b) of the Securities Act of 1933, which was added to that Act by NSMIA) alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court (subject to certain exceptions).

"Class actions" that the legislation bars from State court include actions brought on behalf of more than 50 persons, actions brought on behalf of one or more unnamed parties, and so-called "mass actions," in which a group of lawsuits filed in the same court are joined or otherwise proceed as a single action.

The legislation provides for certain exceptions for specific types of actions. The legislation preserves State jurisdiction over: (1) certain actions that are based upon the law of the State in which the

---

[1] Public law 104–290 (October 11, 1996).

(13)

14

issuer of the security in question is incorporated,[2] (2) actions brought by States and political subdivisions, and State pension plans, so long as the plaintiffs are named and have authorized participation in the action; and (3) actions by a party to a contractual agreement (such as an indenture trustee) seeking to enforce provisions of the indenture.

Additionally, the legislation provides for an exception from the definition of "class action" for certain shareholder derivative actions.

Title II of the legislation reauthorizes the Securities and Exchange Commission (SEC or Commission) for Fiscal Year 1999. This title also includes authority for the SEC to pay economists above the general services scale.

Title III of the legislation provides for corrections to certain clerical and technical errors in the Federal securities laws arising from changes made by the Private Securities Litigation Reform Act of 1995[3] (the "Reform Act") and NSMIA.

The managers note that a report and statistical analysis of securities class actions lawsuits authored by Joseph A. Grundfest and Michael A. Perino reached the following conclusion:

> The evidence presented in this report suggests that the level of class action securities fraud litigation has declined by about a third in federal courts, but that there has been an almost equal increase in the level of state court activity, largely as a result of a "substitution effect" whereby plaintiffs resort to state court to avoid the new, more stringent requirements of federal cases. There has also been an increase in parallel litigation between state and federal courts in an apparent effort to avoid the federal discovery stay or other provisions of the Act. This increase in state activity has the potential not only to undermine the intent of the Act, but to increase the overall cost of litigation to the extent that the Act encourages the filing of parallel claims.[4]

Prior to the passage of the Reform Act, there was essentially no significant securities class action litigation brought in State court.[5] In its Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, the SEC called the shift of securities fraud cases from Federal to State court "potentially the most significant development in securities litigation" since passage of the Reform Act.[6]

The managers also determined that, since passage of the Reform Act, plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws

---

[2] It is the intention of the managers that the suits under this exception be limited to the state in which issuer of the security is incorporated, in the case of a corporation, or state of organization, in the case of any other entity.

[3] Public Law 104–67 (December 22, 1995).

[4] Grundfest, Joseph A. & Perino, Michael A., *Securities Litigation Reform: The First Year's Experience: A Statistical and Legal Analysis of Class Action Securities Fraud Litigation under the Private Securities Litigation Reform Act of 1995*, Stanford Law School (February 27, 1997).

[5] *Id.* n. 18.

[6] *Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995*, U.S. Securities and Exchange Commission, Office of the General Counsel, April 1997 at 61.

15

by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available.[7] In California, State securities class action filings in the first six months of 1996 went up roughly five-fold compared to the first six months of 1995, prior to passage of the Reform Act.[8] Furthermore, as a state securities commissioner has observed:

> It is important to note that companies can not control where their securities are traded after an initial public offering. * * * As a result, companies with publicly-traded securities can not choose to avoid jurisdictions which present unreasonable litigation costs. Thus, a single state can impose the risks and costs of its pecular litigation system on all national issuers.[9]

The solution to this problem is to make Federal court the exclusive venue for most securities fraud class action litigation involving nationally traded securities.

SCIENTER

It is the clear understanding of the managers that Congress did not, in adopting the Reform Act, intend to alter the standards of liability under the Exchange Act.

The managers understand, however, that certain Federal district courts have interpreted the Reform Act as having altered the scienter requirement. In that regard, the managers again emphasize that the clear intent in 1995 and our continuing intent in this legislation is that neither the Reform Act nor S. 1260 in any way alters the scienter standard in Federal securities fraud suits.

Additionally, it was the intent of Congress, as was expressly stated during the legislative debate on the Reform Act, and particularly during the debate on overriding the President's veto, that the Reform Act establish a heightened uniform Federal standard on pleading requirements based upon the pleading standard applied by the Second Circuit Court of Appeals. Indeed, the express language of the Reform Act itself carefully provides that plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." The Managers emphasize that neither the Reform Act nor S. 1260 makes any attempt to define that state of mind.

The managers note that in *Ernst and Ernst* v. *Hochfelder*[10], the Supreme Court left open the question of whether conduct that was not intentional was sufficient for liability under the Federal securities laws. The Supreme Court has never answered that question. The Court expressly reserved the question of whether reckless behavior is sufficient for civil liability under section 10(b) and Rule

---

[7] Testimony of Mr. Jack G. Levin before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, House of Representatives, Serial No. 105–85, at 41–45 (May 19, 1998).

[8] *Id.* at 4.

[9] Written statement of Hon. Keith Paul Bishop, Commissioner, California Department of Corporations, submitted to the Senate Committee on Banking, Housing and Urban Affairs' Subcommittee on Securities" "Oversight Hearing on the Private Securities Litigation Reform Act of 1995," Serial No. 105–182, at 3 (July 27, 1998).

[10] 425 U.S. 185 (1976).

16

10b–5 in a subsequent case, *Herman & Maclean* v. *Huddleston*[11], where it stated, "We have explicitly left open the question of whether recklessness satisfies the scienter requirement."

The managers note that since the passage of the Reform Act, a data base containing many of the complaints, responses and judicial decisions on securities class actions since enactment of the Reform Act has been established on the Internet. This data base, the Securities Class Action Clearinghouse, is an extremely useful source of information on securities class actions. It can be accessed on the world wide web at http://securities.stanford.edu. The managers urge other Federal courts to adopt rules, similar to those in effect in the Northern District of California, to facilitate maintenance of this and similar data bases.

TOM BLILEY,
M.G. OXLEY,
BILLY TAUZIN,
CHRIS COX,
RICK WHITE,
ANNA G. ESHOO,
*Managers on the Part of the House.*

ALFONSE D'AMATO,
PHIL GRAMM,
CHRIS DODD,
*Managers on the Part of the Senate.*

○

---

[11] 459 U.S. 375 (1983).

# EXHIBIT C

105TH CONGRESS } HOUSE OF REPRESENTATIVES { REPORT
2d Session 105–640

## SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998

———————

JULY 21, 1998.—Committed to the Committee of the Whole House on the State of
the Union and ordered to be printed

———————

Mr. BLILEY, from the Committee on Commerce,
submitted the following

# REPORT

together with

## DISSENTING AND ADDITIONAL DISSENTING VIEWS

[To accompany H.R. 1689]

[Including cost estimate of the Congressional Budget Office]

The Committee on Commerce, to whom was referred the bill
(H.R. 1689) to amend the Securities Act of 1933 and the Securities
Exchange Act of 1934 to limit the conduct of securities class actions
under State law, and for other purposes, having considered the
same, report favorably thereon with an amendment and rec-
ommend that the bill as amended do pass.

### CONTENTS

| | Page |
|---|---|
| Amendment | 2 |
| Purpose and Summary | 8 |
| Background and Need for Legislation | 9 |
| Hearings | 11 |
| Committee Consideration | 12 |
| Rollcall Votes | 12 |
| Committee Oversight Findings | 12 |
| Committee on Government Reform and Oversight | 12 |
| New Budget Authority, Entitlement Authority, and Tax Expenditures | 13 |
| Committee Cost Estimate | 13 |
| Congressional Budget Office Estimate | 13 |
| Federal Mandates Statement | 15 |
| Advisory Committee Statement | 15 |
| Constitutional Authority Statement | 15 |
| Applicability to Legislative Branch | 15 |

59–006

7

eign securities markets, such expenses to include necessary logistic and administrative expenses and the expenses of Commission staff and foreign invitees in attendance at such consultations and meetings, including—

"(A) such incidental expenses as meals taken in the course of such attendance;

"(B) any travel or transportation to or from such meetings; and

"(C) any other related lodging or subsistence.".

# TITLE III—CLERICAL AND TECHNICAL AMENDMENTS

**SEC. 301. CLERICAL AND TECHNICAL AMENDMENTS.**

(a) SECURITIES ACT OF 1933.—The Securities Act of 1933 (15 U.S.C. 77 et seq.) is amended as follows:

(1) Section 2(a)(15)(i) (15 U.S.C. 77b(a)(15)(i)) is amended by striking "section 2(13) of the Act" and inserting "paragraph (13) of this subsection".

(2) Section 11(f)(2)(A) (15 U.S.C. 77k(f)(2)(A)) is amended by striking "section 38" and inserting "section 21D(f)".

(3) Section 13 (15 U.S.C. 77m) is amended—

(A) by striking "section 12(2)" each place it appears and inserting "section 12(a)(2)"; and

(B) by striking "section 12(1)" each place it appears and inserting "section 12(a)(1)".

(4) Section 18 (15 U.S.C. 77r) is amended—

(A) in subsection (b)(1)(A), by inserting ", or authorized for listing," after "Exchange, or listed";

(B) in subsection (c)(2)(B)(i), by striking "Capital Markets Efficiency Act of 1996" and inserting "National Securities Markets Improvement Act of 1996";

(C) in subsection (c)(2)(C)(i), by striking "Market" and inserting "Markets";

(D) in subsection (d)(1)(A)—

(i) by striking "section 2(10)" and inserting "section 2(a)(10)"; and

(ii) by striking "subparagraphs (A) and (B)" and inserting "subparagraphs (a) and (b)";

(E) in subsection (d)(2), by striking "Securities Amendments Act of 1996" and inserting "National Securities Markets Improvement Act of 1996"; and

(F) in subsection (d)(4), by striking "For purposes of this paragraph, the" and inserting "The".

(5) Sections 27, 27A, and 28 (15 U.S.C. 77z–1, 77z–2, 77z–3) are transferred to appear after section 26.

(6) Paragraph (28) of schedule A of such Act (15 U.S.C. 77aa(28)) is amended by striking "identic" and inserting "identical".

(b) SECURITIES EXCHANGE ACT OF 1934.—The Securities Exchange Act of 1934 (15 U.S.C. 78 et seq.) is amended as follows:

(1) Section 3(a)(10) (15 U.S.C. 78c(a)(10)) is amended by striking "deposit, for" and inserting "deposit for".

(2) Section 3(a)(12)(A) (15 U.S.C. 78c(a)(12)(A)) is amended by moving clause (vi) two em spaces to the left.

(3) Section 3(a)(22)(A) (15 U.S.C. 78c(a)(22)(A)) is amended—

(A) by striking "section 3(h)" and inserting "section 3"; and

(B) by striking "section 3(t)" and inserting "such section 3".

(4) Section 3(a)(39)(B)(i) (15 U.S.C. 78c(a)(39)(B)(i)) is amended by striking "an order to the Commission" and inserting "an order of the Commission".

(5) The following sections are each amended by striking "Federal Reserve Board" and inserting "Board of Governors of the Federal Reserve System": subsections (a) and (b) of section 7 (15 U.S.C. 78g(a), (b)); section 17(g) (15 U.S.C. 78q(g)); and section 26 (15 U.S.C. 78z).

(6) The heading of subsection (d) of section 7 (15 U.S.C. 78g(d)) is amended by striking "EXCEPTION" and inserting "EXCEPTIONS".

(7) Section 14(g)(4) (15 U.S.C. 78n(g)(4)) is amended by striking "consolidation sale," and inserting "consolidation, sale,".

(8) Section 15 (15 U.S.C. 78o) is amended—

(A) in subsection (c), by moving paragraph (8) two em spaces to the left;

(B) in subsection (h)(2), by striking "affecting" and inserting "effecting";

(C) in subsection (h)(3)(A)(i)(II)(bb), by inserting "or" after the semicolon;

8

(D) in subsection (h)(3)(A)(ii)(I), by striking "maintains" and inserting "maintained";

(E) in subsection (h)(3)(B)(ii), by striking "association" and inserting "associated".

(9) Section 15B(c)(4) (15 U.S.C. 78o–4(c)(4)) is amended by striking "convicted by any offense" and inserting "convicted of any offense".

(10) Section 15C(f)(5) (15 U.S.C. 78o–5(f)(5)) is amended by striking "any person or class or persons" and inserting "any person or class of persons".

(11) Section 19(c) (15 U.S.C. 78s(c)) is amended by moving paragraph (5) two em spaces to the right.

(12) Section 20 (15 U.S.C. 78t) is amended by redesignating subsection (f) as subsection (e).

(13) Section 21D (15 U.S.C. 78u–4) is amended—

(A) by redesignating subsection (g) as subsection (f); and

(B) in paragraph (2)(B)(i) of such subsection, by striking "paragraph (1)" and inserting "subparagraph (A)".

(14) Section 31(a) (15 U.S.C. 78ee(a)) is amended by striking "this subsection" and inserting "this section".

(c) INVESTMENT COMPANY ACT OF 1940.—The Investment Company Act of 1940 (15 U.S.C. 80a–1 et seq.) is amended as follows:

(1) Section 2(a)(8) (15 U.S.C. 80a–2(a)(8)) is amended by striking "Unitde" and inserting "United".

(2) Section 3(b) (15 U.S.C. 80a–3(b)) is amended by striking "paragraph (3) of subsection (a)" and inserting "paragraph (1)(C) of subsection (a)".

(3) Section 12(d)(1)(G)(i)(III)(bb) (15 U.S.C. 80a–12(d)(1)(G)(i)(III)(bb)), by striking "the acquired fund" and inserting "the acquired company".

(4) Section 18(e)(2) (15 U.S.C. 80a–18(e)(2)) is amended by striking "subsection (e)(2)" and inserting "paragraph (1) of this subsection".

(5) Section 30 (15 U.S.C. 80a–29) is amended—

(A) by inserting "and" after the semicolon at the end of subsection (b)(1);

(B) in subsection (e), by striking "semi-annually" and inserting "semiannually"; and

(C) by redesignating subsections (g) and (h) as added by section 508(g) of the National Securities Markets Improvement Act of 1996 as subsections (i) and (j), respectively.

(6) Section 31(f) (15 U.S.C. 80a–30(f)) is amended by striking "subsection (c)" and inserting "subsection (e)".

(d) INVESTMENT ADVISERS ACT OF 1940.—The Investment Advisers Act of 1940 (15 U.S.C. 80b et seq.) is amended as follows:

(1) Section 203(e)(8)(B) (15 U.S.C. 80b–3(e)(8)(B)) is amended by inserting "or" after the semicolon.

(2) Section 222(b)(2) of (15 U.S.C. 80b–18a(b)(2)) is amended by striking "principe" and inserting "principal".

(e) TRUST INDENTURE ACT OF 1939.—The Trust Indenture Act of 1939 (15 U.S.C. 77aaa et seq.) is amended as follows:

(1) Section 303 (15 U.S.C. 77ccc) is amended by striking "section 2" each place it appears in paragraphs (2) and (3) and inserting "section 2(a)".

(2) Section 304(a)(4)(A) (15 U.S.C. 77ddd(a)(4)(A)) is amended by striking "(14) of subsection" and inserting "(13) of section".

(3) Section 313(a) (15 U.S.C. 77mmm(a)) is amended—

(A) by inserting "any change to" after the paragraph designation at the beginning of paragraph (4); and

(B) by striking "any change to" in paragraph (6).

(4) Section 319(b) (15 U.S.C. 77sss(b)) is amended by striking "the Federal Register Act" and inserting "chapter 15 of title 44, United States Code,".

**SEC. 302. EXEMPTION OF SECURITIES ISSUED IN CONNECTION WITH CERTAIN STATE HEARINGS.**

Section 18(b)(4)(C) of the Securities Act of 1933 (15 U.S.C. 77r(b)(4)(C)) is amended by striking "paragraph (4) or (11)" and inserting "paragraph (4), (10), or (11)".

## PURPOSE AND SUMMARY

Title I of H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, makes Federal court the exclusive venue for most securities class action lawsuits. The purpose of this title is to prevent plaintiffs from seeking to evade the protections that Federal law

9

provides against abusive litigation by filing suit in State, rather than in Federal, court. The legislation is designed to protect the interests of shareholders and employees of public companies that are the target of meritless "strike" suits, the purpose of which is to extract a sizeable settlement from companies that are economically forced to settle, regardless of the lack of merits of the suit, simply to avoid the potentially bankrupting expense of litigating.

Additionally, consistent with the determination that Congress made in the National Securities Markets Improvement Act[1] (NSMIA), this legislation establishes uniform national rules for securities class action litigation involving our national capital markets. Under the legislation, class actions relating to a "covered security" (as defined by section 18(b)(1) of the Securities Act of 1933 which was added to that Act by NSMIA) alleging fraud or manipulation must be maintained pursuant to the provisions of Federal securities law, in Federal court (subject to certain exceptions).

"Class actions" that the legislation bars from State court include actions brought on behalf of more than 50 persons, actions brought on behalf of one or more unnamed parties, and so-called "mass actions," in which a group of lawsuits filed in the same court are joined or otherwise proceed as a single action.

The legislation provides for certain exceptions for specific types of actions. The legislation preserves State jurisdiction over: (1) certain actions that are based upon the law of the State in which the issuer of the security in question is incorporated; (2) actions brought by States and political subdivisions, and State pension plans, so long as the plaintiffs are named and have authorized participation in the action; and (3) actions by a party to a contractual agreement (such as an indenture trustee) seeking to enforce provisions of the indenture.

Additionally, the legislation provides for an exception from the definition of "class action" for certain shareholder derivative actions.

Title II of the legislation reauthorizes the Securities and Exchange Commission (SEC or Commission) for Fiscal Year 1999. This title is substantially consistent with H.R. 1262, the Securities and Exchange Commission Reauthorization Act of 1997, which passed the House on November 13, 1997.

Title III of the legislation provides for corrections to certain clerical and technical errors in the Federal securities laws arising from changes made by the Private Securities Litigation Reform Act of 1995[2] (the "Reform Act") and NSMIA.

### BACKGROUND AND NEED FOR LEGISLATION

The 104th Congress passed, over President Clinton's veto, the Reform Act, which was designed to put an end to vexatious litigation that was draining value from the shareholders and employees of public companies. The Subcommittee on Finance and Hazardous Materials held an oversight hearing to review the implementation of the Reform Act on October 21, 1997. During this hearing, wit-

---

[1] Public Law 104–290 (October 11, 1996).
[2] Public Law 104–67 (December 22, 1995).

10

nesses testified that there had been a noticeable shift in class action litigation from Federal to State courts.[3]

A report and statistical analysis of securities class actions lawsuits authored by Joseph A. Grundfest and Michael A. Perino reached the following conclusion:

> The evidence presented in this report suggests that the level of class action securities fraud litigation has declined by about a third in federal courts, but that there has been an almost equal increase in the level of state court activity, largely as a result of a "substitution effect" whereby plaintiffs resort to state court to avoid the new, more stringent requirements of federal cases. There has also been an increase in parallel litigation between state and federal courts in an apparent effort to avoid the federal discovery stay or other provisions of the Act. This increase in state activity has the potential not only to undermine the intent of the Act, but to increase the overall cost of litigation to the extent that the Act encourages the filing of parallel claims.[4]

Prior to the passage of the Reform Act, there was essentially no significant securities class action litigation brought in State court.[5] In its Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995, the SEC called the shift of securities fraud cases from Federal to State court "potentially the most significant development in securities litigation" since passage of the Reform Act.[6]

The Subcommittee also heard testimony during a legislative hearing on H.R. 1689 that, since passage of the Reform Act, plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the Reform Act's procedural or substantive protections against abusive suits are available.[7] In California, State securities class action filings in the first six months of 1996 went up roughly five-fold compared to the first six months of 1995, prior to passage of the Reform Act.[8]

The solution to this problem is to make Federal court the exclusive venue for securities fraud class action litigation.

The Subcommittee heard testimony that the migration to State court was fueled by a desire to circumvent the more stringent re-

---

[3] Testimony of Mr. David L. Anderson before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105–85, at 47 (May 19, 1998). "It is the conclusion of many of us practicing in this area that many state court lawsuits are being brought for improper purposes. . . . The plaintiffs' bar largely ignored the state courts until the passage of the Reform Act. . . . [W]hat they are trying to do is end-run the Reform Act in the state courts. Directing securities class actions cases back to the Federal courts is the only way to eliminate that end run."

[4] Grundfest, Joseph A. & Perino, Michael A., "Securities Litigation Reform: The First Year's Experience: A Statistical and Legal Analysis of Class Action Securities Fraud Litigation under the Private Securities Litigation Reform Act of 1995," Stanford Law School (February 27, 1997).

[5] Id. n.18.

[6] "Report to the President and the Congress on the First Year of Practice Under the Private Securities Litigation Reform Act of 1995," U.S. Securities and Exchange Commission, Office of the General Counsel, April 1997 at 61.

[7] Testimony of Mr. Jack G. Levin before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105–85, at 41–45 (May 19, 1998).

[8] Id. at 4.

11

quirements of the heightened pleading standard adopted under the Reform Act.[9] The Committee addresses this problem in two ways. First, it preempts securities fraud class actions brought under State law. Second, it grants power to Federal judges to quash discovery in State actions if that discovery conflicts with an order of the Federal court. The purpose of this grant of authority is to give Federal judges tools to combat abuse of discovery proceedings in individual actions that may be brought in State court.

The Committee notes that since the passage of the Reform Act, a data base containing many of the complaints, responses and judicial decisions on securities class actions since enactment of the Reform Act has been established on the Internet. This data base, the Securities Class Action Clearinghouse, is an extremely useful source of information on securities class actions. It can be accessed on the world wide web at *http://securities.stanford.edu*. The Committee urges other Federal courts to adopt rules, similar to those in effect in the Northern District of California, to facilitate maintenance of this and similar data bases.

The Committee heard testimony from opponents of the legislation, such as Ms. Mary Rouleau of the Consumer Federation of America (CFA), who testified that the bill was premature, unwarranted based on available evidence, harmful to investors, and overly broad in its proposed preemption of State law. The Committee believes that the overwhelming weight of the evidence available to it supports going forward with this bill at this time for the reasons previously noted. Moreover, the Committee adopted a number of changes to the introduced bill to address the substantive concerns raised in some of the dissenting testimony. These changes reflect and improve upon the companion Senate-passed bill that was approved by that body on May 13, 1998 by a vote of 79 yeas to 21 nays.

## Hearings

On October 21, 1997, the Subcommittee on Finance and Hazardous Material held an oversight hearing on the Implementation of the Private Securities Litigation Reform Act of 1995. The Committee received testimony from the following witnesses: the Honorable Arthur Levitt, Jr., Chairman, Securities and Exchange Commission, accompanied by Mr. Richard H. Walker, General Counsel, Securities and Exchange Commission; Mr. Michael A. Perino, Stanford University School of Law; Mr. Bruce G. Vanyo, Wilson, Sonsini, Goodrich, and Rosati; Mr. Robert V. Stout, Controller, City of Stamford, Connecticut, on behalf of the Government Finance Officers' Association; and Mr. Leonard B. Simon, Milberg Weiss Bershad Hynes & Lerach, L.L.P.

---

[9] Testimony of Mr. David L. Anderson before the Subcommittee on Finance and Hazardous Materials of the Committee on Commerce, Serial No. 105–85, at 46–50 (May 19, 1998). Additionally, one study, by Price Waterhouse LLP, found that the average number of parallel and "federal equivalent" securities class actions filed in state court 1996 grew 355% over the 1991–1995 average. Although there was a drop in the number of these state court filings in 1997, the number of state cases that year nonetheless was 150% higher than the 1991–1995 average. Letter to The Honorable Michael G. Oxley and The Honorable Thomas J. Manton from Daniel V. Dooley, Partner, Price Waterhouse LLP, Regarding the Price Waterhouse LLP Securities Litigation Study and Addendum on State "Parallel" and State "Federal-Equivalent" Securities Litigation Cases at 6 (June 2, 1998).

12

The Subcommittee held a legislative hearing on H.R. 1689, the Securities Litigation Uniform Standards Act, on May 19, 1998. The Subcommittee received testimony from: the Honorable Tom Campbell, U.S. Representative, Fifteenth District, State of California; the Honorable Anna G. Eshoo, U.S. Representative, Fourteenth District, State of California; the Honorable Arthur Levitt, Jr., Chairman, Securities and Exchange Commission; Mr. Jack G. Levin, Director of Legal and Regulatory Affairs, NationsBanc Montgomery Securities; Mr. David L. Anderson, Senior Counsel, Pillsbury, Madison & Sutro; Mr. Jack Coffee, Professor, Columbia University Law School; Mr. Robert C. Hinkley, General Counsel, Xilinx, Inc.; Mr. Richard W. Painter, Professor, Cornell University Law School; Mr. John F. Olson, Gibson, Dunn & Crutcher, LLP; Mr. Blake Campbell, Assistant Commissioner, Securities Regulation Division, Department of Corporations, State of California accompanied by Mr. Peter Kezirian, General Counsel; and Ms. Mary Rouleau, Legislative Director, Consumer Federation of America.

### COMMITTEE CONSIDERATION

On June 10, 1998, the Subcommittee on Finance and Hazardous Materials met in open markup session and approved H.R. 1689, the Securities Litigation Uniform Standards Act of 1998, for Full Committee consideration, amended, by a rollcall vote of 21 yeas to 4 nays. On June 24, 1998, the Committee on Commerce met in open markup session and ordered H.R. 1689 reported to the House, amended, by a voice vote, a quorum being present.

### ROLLCALL VOTES

Clause 2(l)(2)(B) of Rule XI of the Rules of the House requires the Committee to list the recorded votes on the motion to report legislation and amendments thereto. There were no recorded votes taken in connection with ordering H.R. 1689 reported. An Amendment in the Nature of a Substitute by Mr. Bliley was agreed to, amended, by a voice vote. An amendment to the Bliley Amendment in the Nature of a Substitute by Ms. DeGette to add a new section requiring the Securities and Exchange Commission to include an analysis of the impact and consequences of this legislation in each of its first three annual reports submitted after the date of enactment was agreed to by a voice vote. A motion by Mr. Bliley to order H.R. 1689 reported to the House, amended, was agreed to by a voice vote, a quorum being present.

### COMMITTEE OVERSIGHT FINDINGS

Pursuant to clause 2(l)(3)(A) of Rule XI of the Rules of the House of Representatives, the Committee held legislative and oversight hearings and made findings that are reflected in this report.

### COMMITTEE ON GOVERNMENT REFORM AND OVERSIGHT

Pursuant to clause 2(l)(3)(D) of Rule XI of the Rules of the House of Representatives, no oversight findings have been submitted to the Committee by the Committee on Government Reform and Oversight.

# EXHIBIT D



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

Sandra Purowitz, Individually,          )    Civil Action No. CV 05-6090
and on Behalf of All Others             )    MRP (VBKx)
Similarly Situated,                     )
                                        )    ORDER DENYING PLAINTIFF'S
                    Plaintiff,          )    MOTION TO REMAND
                                        )
          vs.                           )
                                        )
DreamWorks Animation SKG, Inc.,         )
Jeffrey Katzenberg, Katherine           )
Kendrick, Kristina M. Leslie,           )
Roger A. Enrico, Paul G. Allen,         )
Lewis W. Coleman, David Geffen,         )
Mellody Hobson, Nathan Myhrvold,        )
Howard Schultz and Does 1-100           )
                                        )
                    Defendants.         )
_____)

Sandra Purowitz, on behalf of herself and all others similarly situated ("Plaintiff") filed a class action lawsuit against DreamWorks Animation SKG, Inc. ("DreamWorks"), Jeffrey Katzenberg, Katherine Kendrick, Kristina M. Leslie, Roger A. Enrico, Paul G. Allen, Lewis W. Coleman, David Geffen, Mellody Hobson, Nathan Myhrvold, Howard Schultz and Does 1-100 (collectively, "Defendants") in Los Angeles County Superior Court on July 29, 2005, alleging claims under §§ 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") relating

1 principally to statements made by DreamWorks regarding its revenue

2 recognition policy and certain home video sales and estimates.

3 Defendants removed the action to federal court pursuant to the

4 Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and

5 Plaintiff has moved to remand. The sole issue before the Court is

6 whether SLUSA permits removal to federal court in this instance.

7 There is a split in authority in this district and in other

8 districts as to the issue of whether a class action alleging solely

9 violations of federal law may be removed to federal court pursuant to

10 SLUSA. In *Brody v. Homestore, Inc.* ("*Brody*"), 240 F. Supp. 2d 1122

11 (C.D. Cal. 2003), the Court looked to the text and legislative intent of

12 SLUSA and found that it does authorize removal in such cases. More

13 recently, in *Pipefitters Local 522 and 633 Pension Trust Fund v. Salem*

14 *Communications Corp.* ("*Pipefitters*"), No. CV 05-2730-RGK, 2005 U.S.

15 Dist. LEXIS 14202 (C.D. Cal. June 28, 2005), the Court held that the

16 plain language of SLUSA unambiguously states that removal is improper

17 where only federal claims are present. This Court is in agreement with

18 the conclusion reached in *Brody,* and denies the Plaintiff's motion to

19 remand for the reasons set forth below.

20 Prior to the enactment by Congress of SLUSA in 1998, state and

21 federal courts had concurrent jurisdiction over claims brought under the

22 Securities Act. *See 15 U.S.C. § 77v(a).* SLUSA changed this by

23 authorizing the removal to federal court of certain class actions

24 involving nationally listed securities. *See 15 U.S.C. §§ 77p(b)-(c),*

25 *77v(a).* The relevant portion of SLUSA is subsection (c):

26

27 (c) Removal of covered class actions. Any covered class action

28 brought in any State court involving a covered security, as set forth in

2

subsection (b), shall be removable to the Federal district court for the

district in which the action is pending, and shall be subject to

subsection (b).

15 U.S.C. § 77p(c). Subsection (b), in turn, reads as follows:

(b) Class action limitations. No covered class action based upon

the statutory or common law of any State or subdivision thereof may be

maintained in any State or Federal court by any private party alleging-

(1) an untrue statement or omission of a material fact in

connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or

deceptive device or contrivance in connection with the purchase or sale

of a covered security.

15 U.S.C. § 77p(b).

Employing an interpretation of subsection (c) based on that of the

Pipefitters Court, Plaintiff argues that the phrases "as set forth in

subsection (b)" and "shall be subject to subsection (b)" refer the

reader to the phrase "based upon the statutory or common law of any

State or subdivision thereof" from subsection (b), with the result that

only covered class actions based at least in part upon state law claims

may be properly removed. As there are not any state law claims in this

case, Plaintiff argues that removal here was improper. However, as

Defendants correctly point out, Plaintiff's reading of subsection (c)

leads to the somewhat bizarre outcome that only those claims expressly

prohibited in either state or federal court by subsection (b) - claims

3

1    based on state law - are by themselves removable.  Federal claims will

2    only be removable to the extent they are coupled with state law claims,

3    which state law claims will then be required to be dismissed upon

4    arrival in federal court.

5        Notwithstanding this anomalous outcome, Plaintiff argues that this

6    Court should find that the plain language of § 77p(b)-(c) does not

7    authorize the removal of federal claims by themselves.  However, this

8    Court disagrees with the interpretation of § 77p(b)-(c) set forth in

9    *Pipefitters* and proposed here by Plaintiff.  As this Court reads

10   subsection (c), the phrase "as set forth in subsection (b)" does not

11   modify merely "[a]ny covered class action", but rather the entire

12   preceding phrase, "[a]ny covered class action brought in any State court

13   involving a covered security."  Had Congress intended subsection (c) to

14   to be read as Plaintiff suggests, it could have inserted the phrase "as

15   set forth in subsection (b)" immediately after the words "covered class

16   actions," in which case Plaintiff's reading would clearly be correct.

17   However, by drafting subsection (c) as it did, the words "as set forth

18   in subsection (b)" appear to be shorthand not for the concept that such

19   claims must be based on state law, but rather for the lengthier contents

20   of subsections (b)(1) and (b)(2), which set forth the types of claims

21   that are permissible as federal but not as state law claims.  Read this

22   way, application of subsection (c) leads to the perfectly sensible

23   outcome that federal claims of the type described in subsections (b)(1)

24   and (b)(2) are removable to federal court, whereas state claims of the

25   type prohibited in either state or federal court under subsection (b)

26   are not.

27       The *Pipefitters* opinion, along with several other cases from other

28   jurisdictions that Plaintiff cites in support of her interpretation,

1  also places great weight on the phrase "and shall be subject to

2  subsection (b), " and argues that these words should be read to mean

3  that "removal is allowed only for class actions "subject to subsection

4  (b),"" i.e., claims based on state law. *Pipefitters*, 2005 U.S. Dist.

5  LEXIS 14202 at *6. However this is not what the statute says. There

6  is a difference between saying that 'any covered class action subject to

7  subsection (b) shall be removable' and ' any class action shall be

8  removable, and shall be subject to subsection (b).' The former requires

9  that removable class actions be those class actions that are the subject

10 of subsection (b); the latter simply confirms that subsection (c) does

11 not override subsection (b) by allowing for the removal of state claims

12 otherwise prohibited by subsection (b). It is the latter formulation

13 that Congress chose in drafting subsection (c). Thus, while in

14 agreement with the *Brody* court that the language of subsection (c) is

15 "inartfully (or even inaccurately) worded," this Court finds that the

16 reading proposed by Defendants is the correct one.

17     Plaintiff points us to the proposition that "[l]egislative history

18 is irrelevant to the interpretation of an unambiguous statute."

19 *Pipefitters*, 2005 U.S. Dist. LEXIS 14202 at *8, quoting *Davis v.*

20 *Michigan Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989). However

21 where, as here, the statutory language is at best ambiguous, a review of

22 the relevant legislative history is appropriate. In this case, the

23 legislative history makes clear that in enacting SLUSA, Congress was

24 attempting to close a loophole in the Private Securities Litigation

25 Reform Act of 1995 ("PLSRA"), by which plaintiffs were attempting to

26 avoid the increased procedural hurdles to securities lawsuits put in

27 place by PLSRA by filing in state, rather than federal court. As

28 Defendants note in their opposition brief, the legislative record is

1   replete with statements to the effect that the intent of Congress in

2   enacting SLUSA was to make the federal court the exclusive venue for

3   lawsuits with respect to nationally listed securities.   Neither

4   Plaintiff's brief nor any of the opinions cited by Plaintiff in support

5   of her motion to remand provide any convincing arguments or examples to

6   the contrary.   Thus, not only is Plaintiff's interpretation of the

7   relevant provisions of SLUSA unconvincing in its own right, it is simply

8   irreconcilable with the manifest intent of Congress in enacting the

9   legislation.

10      The Court concludes that this action is removable pursuant to 15

11  *U.S.C.* § 77*p(b)-(c)*.   Accordingly, Plaintiff's motion to remand is

12  DENIED.

13

14  **IT IS SO ORDERED.**

15

16  DATED: *November 14, 2005*           *Mariana R. Pfaelzer*

17                                        Honorable Mariana R. Pfaelzer

18                                        United States District Judge

19

20

21

22

23

24

25

26

27

28